UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN RAY,

        Plaintiff,

v.

VICTORIA JANOWIECKI and
KIMBERLY KORTE,

        Defendants.

Case No. 2:25-11778
District Judge Terrance G. Berg
Magistrate Judge Anthony P. Patti

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO
GRANT DEFENDANT KORTE'S MOTION FOR SUMMARY JUDGMENT
ON THE BASIS OF EXHAUSTION (ECF NO. 13) GRANT DEFENDANT
JANOWIECKI'S MOTION TO DISMISS (ECF NO. 16)**

**I.    RECOMMENDATION**: The Court should **GRANT** Defendant Korte's

motion for summary judgment on the basis of exhaustion (ECF No. 13) and

**GRANT** Defendant Janowiecki's motion to dismiss (ECF No. 16).

**II.    REPORT:**

    **A.    Background**

Plaintiff Justin Ray, a state prisoner, initiated this action on June 13, 2025,

alleging constitutional violations of the Eighth Amendment while housed at the

Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan.  (ECF No. 1)

Specifically, Plaintiff brought suit against ARF Health Unit Manager ("HUM")

Kimberly Korte and MDOC Contractor Nurse Practitioner Victoria Janowiecki based on events that occurred following Plaintiff's April 8, 2025 rotator cuff surgery.  (ECF No. 1, PageID.7.)  He alleges that his surgeon recommended oxycontin for pain for a period of four weeks, April 8, 2025 to May 6, 2025.  (*Id.*) According to Plaintiff, after returning to ARF following his surgery, Defendant Janowiecki prescribed only tramadol, which Plaintiff claims is a less potent pain medication, for a five day period of April 9, 2025 until April 13, 2025.  (*Id.*) Plaintiff claims that he "reported to health care that he was still in an extreme amount of pain," but that health care provided only over the counter pain medication.  (*Id.*)  Plaintiff claims that health care notified Defendant Janowiecki, who approved a three day extension of tramadol until April 19, 2025. (*Id.*) However, Plaintiff asserts that Janowiecki did not enter the extension into the computer, and Plaintiff therefore did not receive his morning and noon dose on April 16, 2025.  (*Id.*)

On April 20, 2025, Plaintiff notified Nurse Watterson that he was "still experiencing severe post surgical pain," and Nurse Watterson relayed the message to Janowiecki, who refused to prescribe any further narcotics medication. (*Id.*) Plaintiff alleges that he "submitted several kites regarding still experiencing severe pain 8 out [of] 10 on [the] pain scale[,]" but that Defendant Janowiecki refused to

2

prescribe anything stronger than ibuprofen "despite the surgeon's recommendation." (*Id.*)

Plaintiff next kited Defendant Korte, who was Defendant Janowiecki's on site supervisor, requesting Korte's intervention. (*Id.*)  Defendant Korte "responded by saying that a surgeon's [recommendations] are just that." (*Id.*)  Plaintiff alleges that he filed a Step I grievance, which he claims was wrongfully denied for being vague.  (ECF No. 1, PageID.8.)

Apparently, during this time period, Plaintiff was seen by Defendant Janowiecki "for ongoing pain and was prescribed a muscle relaxer, which was ineffective." (*Id.*)  Plaintiff asserts that at some point after May 13, 2025, his pain began to reduce due to "natural healing," but that Defendants' actions constituted "deliberate indifference to a medical condition requiring surgery and an extremely painful recovery, 4-6 weeks, caus[ing] Plaintiff undue pain and suffering despite multiple [cries] for help." (*Id.*)

The case was assigned to Judge Terrance G. Berg, who referred the matter to me "for all pretrial proceedings, including a hearing and determination of all non−dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B)." (ECF No. 8.)

On September 4, 2025, Defendant Korte filed a motion for summary judgment on the basis of exhaustion.  (ECF No. 13.)  Shortly thereafter, Defendant Janowiecki filed a motion to dismiss for failure to state a claim.  (ECF No. 16.)  Both motions have been fully briefed.

### B.    Standard

#### 1.    Rule 56

##### a.    Failure to exhaust and PLRA cases

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit."  *Jones v. Bock*, 549 U.S. 199, 203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]"  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures."

*Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

The Supreme Court has held that "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. As such, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

"Once an affirmative defense is asserted, it may be adjudicated at any point in the development of a lawsuit that the rules of procedure allow. As the *Jones* Court noted, because a plaintiff need not anticipate or plead around an exhaustion defense, that defense usually may not be addressed in a motion under Rule 12(b)(6) for failure to state a claim." *Anderson v. Jutzy*, 175 F. Supp. 3d 781, 786 (E.D. Mich. 2016) (Lawson, J., adopting in part report and recommendation of Whalen, M.J.) (citing *Jones*, 549 U.S. at 215). To the extent the record permits, the Court addresses whether a prisoner has exhausted administrative remedies under Federal Rule of Civil Procedure 56. *See Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc); *see also Melton v. Michigan Corr. Comm'n,* No. 07–15480, 2009 WL 722688, at *6 (E.D. Mich. Mar. 17, 2009) (resolving failure to exhaust administrative remedies in a motion for summary judgment). "The

summary judgment motion is especially well suited to pretrial adjudication of an exhaustion defense, because proof of lack of exhaustion generally requires resort to matters outside the pleadings, such as affidavits or documentary evidence." *Anderson*, 175 F. Supp. 3d at 787.

### b.     Summary judgment standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC*

*v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment."  *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative.  *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'"  *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

### 2.      Rule 12 Standard

When deciding a motion to dismiss under this Fed. R. Civ. P. 12, the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual

8

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[1]

---

[1] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

### C.    Discussion

#### 1.    Defendant Korte's Motion for Summary Judgment

##### a.    Plaintiff's Grievances

Under MDOC Policy Directive ("PD") 03.02.130, "Prisoner/Parolee

Grievances" (eff. date Oct. 21, 2024), within two business days of a grievable

issue, a grievant must attempt to reconcile the issue with the staff member

involved; the grievant must then file a Step I grievance within five business days.

(ECF 13-2, PageID.72.)  Complaints filed by prisoners are only exhausted when

the grievance is pursued through all three steps of the grievance process as defined

by PD 03.02.130.  (ECF 13-2, PageID.69.)

Defendant Korte has submitted Plaintiff's Step III grievance report, which is

authenticated by Carolyn Nelson's affidavit.  (ECF No. 13-3, PageID.78-80.)   The

grievance report shows only one grievance pursued through Step III after the date

of Plaintiff's surgery, ARF-25-04-0395-28B ("ARF 395").  (ECF No. 13-3,

PageID.80.)

In Plaintiff's Step I grievance, he stated:

I am suffering severe post surgery pain in my left shoulder.  I have kited
Healthcare several times on above dates [April 18, 19, 20, 21, 22].  NP
Janowiecki refused to request an extension from Lansing for my pain meds
(tramadol) which was effective, on 4-18-25.  Was seen on 4-21-25 for pain
and prescribed ibuprofen which was not effective. Kited again on 4-22-25
and seen on 4-25-25 and was given nothing.  Janowiecki is failing to
properly manage my severe post surgery pain and by doing so is causing me
undue pain/suffering.

(ECF No. 13-3, PageID.84.)  Under the section to list his attempts at resolution, Plaintiff wrote "kited HUM and healthcare."  (*Id.*)  The grievance was rejected at Step I for being "vague/illegible."[2]  (ECF No. 13-3, PageID.85.)

Plaintiff appealed to Step II stating, "Step I Grievance was <u>not</u> vague.  It contained/stated the problem very clearly: 'Janoweiki [sic] is failing to properly manage my severe post surgery pain.' It also contained dates of various visits to health care as well as the fact that I've kited H/C several times."  (ECF No. 13-3, PageID.82.)  The Step I grievance rejection was upheld at Step II.  (ECF No. 13-3, PageID.83.)

Plaintiff appealed to Step III.  (ECF No. 13-3, PageID.82.)  His Step III appeal states, "My Grievance clearly states my issues including who, what, when, where, how & why.  1.) Who—NP Janoweiki  2.) Failed to manage my post surgical pain  3.) when-4-18, 19, 20, 21, 22, 25  4.) Where- ARF  How is <u>any</u> of

---

[2] For reasons which will be discussed *infra*, the validity of the rejection is not an issue before the Court, as Plaintiff failed to exhaust his claims against Korte for other reasons and as Janowiecki has not filed a motion for summary judgment based on exhaustion.  Nonetheless, the Court is beyond perplexed at how the MDOC could reject this grievance as being "vague/illegible" as to Janowiecki.  Plaintiff's handwriting is amongst the most clear and legible handwriting this Court has encountered in *pro se* filings, and his grievance gave a brief but specific description of the pain management issues he had encountered.  The Court finds nothing vague or illegible about Plaintiff's grievance *as to Janowiecki*.  To the extent the grievance was meant to identify Korte, however, the grievance is unquestionably vague as to Korte, as it never mentions her name or the specific actions in which she was alleged to be involved.

this vague? This is a proper grievance." (*Id.*)  The Step III grievance was received on May 19, 2025, and the rejection was upheld on June 20, 2025.  (ECF No. 13-3, PageID.81.)  As noted above, Plaintiff initiated this lawsuit on June 13, 2025, one week before receiving his response to his Step III rejection.

### b.  Grievance Exhaustion

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his or her claim.  *Id*. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").  Thus, the PLRA requires not only exhaustion, but *proper* exhaustion.  *See Woodford*, 548 U.S. at 92 (concluding that if a prisoner fails to file a procedurally proper grievance, he fails to satisfy the PLRA's exhaustion requirement).

Here, the Court should find that Plaintiff did not properly exhaust his claims against Defendant Korte for two reasons.  First, Plaintiff did not fully exhaust ARF 395 because he filed suit prematurely.  The MDOC's policy directive states that "[g]enerally Step III responses will be responded to within 60 business days."  (*See* ECF No. 13-2, PageID.75.)  Here, Plaintiff filed suit approximately

four weeks after appealing his Step II response, and prior to receiving any response to his Step III appeal.  Courts in the Sixth Circuit have consistently held that when a grievant files suit prior to receiving a Step III response and prior to the expiration of the 60 day time period, his grievance is not properly exhausted.  *See Roden v. LaPham,* No. 2:21-CV-12183, 2022 WL 19518406, at *6 (E.D. Mich. Sept. 6, 2022) (Morris, MJ), *report and recommendation adopted*, No. 21-12183, 2023 WL 2646203 (E.D. Mich. Mar. 27, 2023)(Goldsmith, J.) (dismissing on exhaustion grounds where "Plaintiff jumped the gun by filing his complaint only 35 days after purportedly filing his Step III appeal."); *Threatt v. Williams-Ward*, No. CV 15-12585, 2016 WL 6653013, at *5 (E.D. Mich. July 13, 2016) (Stafford, MJ), *report and recommendation adopted*, No. 15-12585, 2016 WL 4607639 (E.D. Mich. Sept. 6, 2016) (Parker, J.) (dismissing lawsuit where the plaintiff had not received his Step III response and filed suit prior to expiration of the deadline for receiving the response).  In *Roden*, Judge Goldsmith adopted the magistrate judge's report and recommendation and dismissed a similar unexhausted claim, explaining:

> [O]ther courts have found that MDOC grievants have failed to exhaust their administrative remedies when they filed suit fewer than 60 days after submitting Step III grievances. The district court in *Johnson v. Burt* found that an incarcerated plaintiff had "not exhausted his administrative remedies" where he had "submitted his Step III grievance on August 14, 2020, and then filed [his] lawsuit on August 24, without waiting for a response or allowing the 60-day response period to expire." No. 1:20-CV-802, 2021 WL 3473483, at *1 (W.D. Mich. Aug. 6, 2021). The United States Court of Appeals for the Sixth Circuit vacated the district judge's decision to dismiss the plaintiff's claims with prejudice, but it affirmed the court's

finding as to exhaustion, stating: "'Generally, Step III responses will be responded to within 60 business days' .... Because [plaintiff] filed his complaint before his Step III appeal was rejected, his complaint was subject to dismissal for lack of exhaustion." *Johnson v. Burt*, No. 21-2878, 2023 WL 2125744, at *2 (6th Cir. Feb. 15, 2023) (quoting MDOC PD 03.02.130(II)).

*Roden*, 2023 WL 2646203, at *2. Here, as in *Roden*, Plaintiff "jumped the gun" by filing suit before the grievance procedure outlined in PD 03.02.130 had been completed. As such, his claims set forth in ARF 395 are unexhausted.

Moreover, even if Plaintiff had exhausted the claims in ARF 395, Defendant Korte is still entitled to summary judgment because Plaintiff did not exhaust any claims against her. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). Moreover, "[g]rievances are defendant-specific, which is to say that a grievance is properly exhausted against a particular defendant only insofar as the grievance actually names that defendant." *Burley v. Michigan Dep't of Corr.*, No. 16-CV-10712, 2016 WL 11259277, at *4 (E.D. Mich. Nov. 30, 2016) (Morris, MJ) (collecting cases), *report and recommendation adopted*, No. 16-CV-10712, 2017 WL 877219 (E.D. Mich. Mar. 6, 2017) (Steeh, J.). "Where a specific defendant is not named in a grievance, it is well established that a prisoner's administrative remedies have not been exhausted as to that defendant." *Redmond v. Klee*, No. CV 16-12974, 2018 WL 1635243, at

14

*3 (E.D. Mich. Feb. 23, 2018) (Grand, MJ) (collecting cases), *report and recommendation adopted*, No. 16-12974-DT, 2018 WL 1570426 (E.D. Mich. Mar. 30, 2018) (Cleland, J.). This is particularly true where, as here, a grievance names one individual but not another. *See Page v. Nenrod*, No. 4:22-CV-11571, 2023 WL 9065217, at *4 (E.D. Mich. Nov. 28, 2023) (Altman, MJ), *report and recommendation adopted*, No. 22-11571, 2024 WL 37928 (E.D. Mich. Jan. 3, 2024) (Behm, J.) (dismissing claims as unexhausted against two defendants who were not named in the grievances when the grievance "*did* identify a culprit") (emphasis in original).

There is no question that Plaintiff did not name Defendant Korte at any stage of his grievances. Plaintiff argues that he "clearly stated in the top section of his step one grievance that he kited the HUM (Health Unit Manager) for help" and "[t]here was only one HUM at ARF and it was HUM Korte." (ECF No. 15, PageID.87.) Even accepting this unverified representation to be true, a fleeting mention to *kiting* a HUM is insufficient as a matter of law to put Korte on notice that she was the focus of the *grievance*, or, for that matter, to *exhaust* a grievance. *See generally Page*, 2023 WL 9065217, at *4. A review of each Step of ARF 395 makes clear that Defendant Janowiecki was not only the only named "culprit," but the focus of Plaintiff's grievance. At Step I Plaintiff identified only Janowiecki and stated, "Janowiecki is failing to properly manage my severe post surgery pain

15

and by doing so is causing me undue pain/suffering." (ECF No. 13-3, PageID.84.) At Step II, Plaintiff appealed by reiterating: "Step I Grievance was <u>not</u> vague. It contained/stated the problem very clearly: 'Janoweiki [sic] is failing to properly manage my severe post surgery pain.' It also contained dates of various visits to health care as well as the fact that I've kited H/C several times." (ECF No. 13-3, PageID.82.) At Step III, Plaintiff insisted "My Grievance clearly states my issues including who, what, when, where, how & why. *1.) Who—NP Janoweiki.* (*Id.* (emphasis added).) There is no genuine issue of fact that Plaintiff did not sufficiently identify Korte in ARF 395.[3] As such, the claims against her are unexhausted.

Because Plaintiff filed this lawsuit prematurely and did not complete the entire grievance process and because additionally he did not identify Defendant Korte in ARF 395, the Court should **GRANT** Defendant Korte's motion for summary judgment (ECF No. 13) on the basis of exhaustion.

---

[3] I find no merit or authority for Plaintiff's argument that he is entitled to a jury trial on whether he failed to exhaust because "the MDOC has a long and documented history of improperly screening inmate grievances, rejecting valid grievances, and rubber stamping step two and step three appeals." (ECF No. 15, PageID.88.) As Defendant points out, the Supreme Court recently held in *Perttu v. Richards,* 605 U.S. 460 (2025) that prisoners are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment. Plaintiff does not present such a claim in this case and *Perttu* is therefore inapplicable.

### 2.    Defendant Janowiecki's Motion to Dismiss

### a.    Eighth Amendment

"The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs . . . ."  *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008).  "A constitutional claim for deliberate indifference to serious medical needs requires a showing of objective and subjective components."  *Phillips*, 534 F.3d at 539; *see also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001)).  As the Supreme Court has instructed in *Farmer v. Brennan*, 511 U.S. 825 (1994):

> It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety.  Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met.  *First*, the deprivation alleged must be, objectively, "sufficiently serious," . . . ; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," . . . .
>
> The *second* requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." . . . To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." . . . In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety, . . . a standard the parties agree governs the claim in this case.

17

*Farmer*, 511 U.S. at 834 (emphases added, internal footnote and internal citations omitted). The Court then went on to set forth the test for deliberate indifference:

> . . . a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and *disregards* an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he *should have perceived but did not*, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837–838 (emphases added). "[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment." *Id.* at 839–840.

### b.    Analysis

Defendant Janowiecki argues that Plaintiff's complaint fails to state a claim against her for deliberate indifference under the Eighth Amendment, because Plaintiff's complaint does not allege sufficient facts to meet either the subjective or the objective component to rise to deliberate indifference. The Court should agree and find that *at most* the complaint sets forth *perhaps* a claim for negligence.

Construing Plaintiff's complaint in a light most favorable to him, Plaintiff alleges that he underwent surgery on April 8, 2025, and that Defendant Janowiecki prescribed him post-surgery medication of tramadol for five days, from April 9,

18

2025 until April 13, 2025 (ECF No. 1, PageID.7.) Plaintiff further claims that on April 14, he "reported to health care that he was still in an extreme amount of pain," but that health care provided only over the counter pain medication. (*Id.*) Plaintiff alleges that Defendant Janowiecki eventually approved a three day extension of tramadol from April 16 to April 19, 2025. (*Id.*) Plaintiff again reported pain starting on April 20, but Defendant Janowiecki refused to prescribe anything stronger than ibuprofen and, on at least one occasion, a muscle relaxer. Plaintiff asserts that at some point after May 13, 2025, his pain began to reduce due to "natural healing," but that Defendants' actions constituted "deliberate indifference to a medical condition requiring surgery and an extremely painful recovery, 4-6 weeks, caus[ing] Plaintiff undue pian and suffering despite multiple [cries] for help." (*Id.*)

So, based on the allegations in the complaint, Plaintiff received tramadol from April 9 until April 13, 2025, and then again from April 16 to April 19, for a total of 8 days in the eleven days post-surgery. (*Id.*) Plaintiff also received ibuprofen from April 14 until April 16, and then again after April 20, and at some point received a muscle relaxer in an attempt to alleviate the pain. Plaintiff alleges that, instead of this treatment, Defendant Janowiecki's should have prescribed oxycontin for pain for period of four weeks, April 8, 2025 to May 6, 2025, consistent with the surgeon's recommendation. According to Plaintiff's

allegations, the failure to prescribe oxycontin – a highly addictive drug – constitutes deliberate indifference to his medical needs and a violation of the Eighth Amendment.  The Court should agree with Defendant that, even accepting Plaintiff's allegations and all reasonable inferences as true, his complaint fails to state a claim under the Eighth Amendment.

The allegations in the complaint are simply insufficient to show that Plaintiff's care was "so woefully inadequate as to amount to not treatment at all." *Colwell v. Corizon Healthcare Inc.*, No. 11-cv-15586, 2014 WL 6686764, at \*4 (E.D. Mich. Nov. 26, 2014) (Murphy, J.) (citing *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)) (internal quotation marks omitted).  In evaluating an Eighth Amendment claim, courts "distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received *inadequate* medical treatment." *Id.* (emphasis added).  When a prisoner claims his care was inadequate, "[c]ourts are generally reluctant to second guess the medical judgement of prison officials." *Id.* (recognizing a narrow exception for cases where medical treatment was "so woefully inadequate as to amount to no treatment at all").

Here, based on Plaintiff's allegations, he received consistent treatment for his pain, just not the treatment that Plaintiff wanted.  "[D]ifferences in judgment between an inmate and prison medical personnel regarding the appropriate medical

20

diagnoses or treatment are not enough to state a deliberate indifference claim."

*Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  There is no indication in the complaint that Defendant Janowiecki was subjectively aware of a serious medical need and consciously disregarded it.  Indeed, Plaintiff received eight days of tramodal and continued access to ibuprofen following his surgery, as well as a muscle relaxer in an attempt to lesson his pain.  It is true he did not receive the exact treatment *recommended* by the surgeon, but that medication was only recommended and not required, and "mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference."  *Johnson v. Marcum*, No. 5:13CV-P103-R, 2014 WL 112364, at *6 (W.D. Ky. Jan. 10, 2014) (citing *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996)) (dismissing Eighth Amendment claim where prisoner requested ibuprofen and pain medication but received only one ice pack for his extreme pain and migraine headaches because "Plaintiff was seen by a nurse and received treatment; he just did not receive the treatment he desired.").

At *most* Plaintiff's complaint could perhaps be read to state a claim for negligence, but deliberate indifference "entails something more than mere negligence." *Farmer,* 511 U.S. at 835.  "This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering." *Reed v.*

21

*Buchanan*, No. 2:17-CV-00156, 2019 WL 4367490, at *6 (W.D. Mich. May 1, 2019), *report and recommendation adopted,* No. 2:17-CV-156, 2019 WL 4319445 (W.D. Mich. Sept. 12, 2019) (citing *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997)).

Plaintiff's complaint fails to allege facts to draw the inference that "his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (*quoting Alspaugh*, 643 F.3d at 169). Receiving consistent pain medication throughout the relevant time period, though not the pain medication Plaintiff desired, is not the same thing as care that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). Here, Plaintiff's allegations show continuous monitoring and treatment by Defendant Janowiecki. And "when 'a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted.'" *Rhinehart v. Scutt*, 894 F.3d 721, 743 (6th Cir. 2018) (*quoting Self v. Crum*, 439 F.3d 1227, 1232–33 (10th Cir. 2006)).

As such, Plaintiff's complaint fails to state a claim against Defendant Janowiecki and her motion should therefore be **GRANTED.**

## D.      Conclusion

For the reasons stated above, the Court should **GRANT** Defendant Korte's

motion for summary judgment on the basis of exhaustion (ECF No. 13) and

**GRANT** Defendant Janowiecki's motion to dismiss (ECF No. 16).

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within **14 days** of service,

as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to

file specific objections constitutes a waiver of any further right of appeal.  *Thomas*

*v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d

505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than **14 days** after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated:  June 19, 2026

                             Anthony P. Patti
                             UNITED STATES MAGISTRATE JUDGE